702 A.2d 531

SANDRA STECKLER, PLAINTIFF–APPELLANT, v.
MARKET TRANSITION FACILITY OF NEW
JERSEY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1997—Decided November 24, 1997.

---

358

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIĠUEZ.

*Sudha Tiwari Kantor* argued the cause for appellant (*Groen, Laveson, Goldberg & Rubenstone,* attorneys; *Murray S. Issadore,* on the brief, and *Ms. Kantor,* on the reply brief).

*William R. Hopkin, Jr.* argued the cause for respondent (*Tomlin, Clark, Hopkin and Montemurro,* attorneys; *Mr. Hopkin,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiff, Sandra Steckler, appeals from an order granting summary judgment to defendant, Market Transition Facility (MTF), entered on September 5, 1996 and from the denial of her motion for reconsideration entered on November 13, 1996. We reverse and remand.

Plaintiff instituted suit in the Law Division on December 9, 1994 seeking to compel MTF to participate in underinsured motorists (UIM) arbitration. She alleged that she did not own an automobile or live in a household in which anyone owned an automobile and that MTF provided automobile insurance coverage, including UIM coverage, to Joel Felsher, owner of a Ford Taurus automobile registered in New Jersey.

Plaintiff alleged that on August 30, 1991, while in Massachusetts, she was a passenger in the Felsher automobile when she suffered personal injuries as a result of an accident caused by the sole negligence of the driver of another vehicle. The culpable vehicle had automobile liability coverage only in the minimum amount permitted in Massachusetts. Therefore, she settled her claim against the lone tortfeasor for the maximum available amount of $10,000, although allegedly reasonable compensation for her injuries well exceeds that amount.

Plaintiff demanded that defendant either pay her UIM claim or submit it to arbitration, but at all times, defendant has refused plaintiff's demand. Plaintiff filed this action to compel defendant to submit the claim to arbitration, pay counsel fees and costs of suit, or to obtain such other relief as may be appropriate under the circumstances.

Inexplicably, neither party has supplied this court with a copy of the answer filed on behalf of MTF. Defendant's memorandum of law accompanying its motion for summary judgment seeks dismissal because on April 21, 1992, plaintiff settled her claim with the tortfeasor and executed a release in his favor. Defendant's memorandum states that "[a]fter settling that claim, plaintiff then notified the MTF that she was asserting a UIM claim, by letter of May 8, 1992 (Exhibit D)."[1] The MTF failed to respond, so plaintiff's attorney filed the within lawsuit to compel the MTF to name an arbitrator and arbitrate the UIM claim.

The memorandum also states, "We do not admit that the MTF owes coverage." It then continues:

Since we do not admit coverage, we cannot provide the Court with a copy of the insurance policy between the insured and the MTF. However, we can direct the Court to the policy language that would be applicable if there was a policy in effect, the standard MTF policy language that appears in Craig and Pomeroy, *New Jersey Auto Insurance Law* at Appendix C–1, pages 579 to 608 (Exhibit E). The standard policy language provides that: "If we make a payment under this policy and the person to whom or for whom payment was made has the right to recover damages from another, we shall be subrogated to that right. That person shall do: (1) whatever is necessary to enable us to exercise our right; and (2) nothing after loss to prejudice them." (Exhibit E, at page 592).[2]

The September 5, 1996 order granting summary judgment to defendant does not reveal whether oral argument was presented or whether the court placed its opinion on the record. We have been supplied only with a transcript of the argument and decision relating to plaintiff's motion for reconsideration. On October 11, 1996, the judge, after hearing oral argument on that motion, reserved decision. On October 21, 1996, he rendered his written decision:

The following is my determination in the matter of Steckler vs. Market Transition Facility of New Jersey for summary judgment in the above matter.

The court determines that plaintiff's acceptance of the $10,000.00 offer settling the third party claim was conclusive as to any rights the UIM carrier would or

---

[1] This exhibit also was not made available to this court.

[2] Again the exhibit referred to was not made available to us.

could have exercised, and that the same was in violation of the requirements set forth in *Longworth v. Van Houten,* 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988).

Plaintiff's counsel in Boston, Massachusetts was aware of the necessity of providing notice to the UIM carrier before concluding settlement as indicated by the copy of his letter dated April 22, 1992 attached to plaintiff's brief. Any settlement should have been delayed until appropriate notice was given or reserving the UIM carrier's right to proceed against the third party defendant. This was not done.

It is, therefore, my determination that the application for reconsideration is denied.

In *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 A.2d 414 (App.Div.1988), we established procedures to be employed by an insured who receives an acceptable settlement offer from a tortfeasor's carrier and seeks to assert a claim under the insured's UIM coverage. *Id.* at 194, 538 A.2d 414. An insured, obligated by the insurance contract to protect the insurer's subrogation rights, must notify the UIM carrier of the proposed settlement in order to allow the insured's UIM carrier to promptly pay the sum offered by the tortfeasor in return for an assignment of the insured's claim against the tortfeasor. *Ibid.* What constitutes prompt notice of a UIM carrier's decision to act is determined by the circumstances but is presumptively 30 days. *Ibid.* This procedure was endorsed by our Supreme Court in *Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 174, 652 A.2d 162 (1995). The Supreme Court noted that "[t]he *Longworth* procedure balances the interests of insureds and insurers, injured victims and tortfeasors." *Id.* at 175, 652 A.2d 162.

In *Longworth,* the injured driver was seeking UIM benefits from his own insurance company. *Longworth, supra,* 223 *N.J.Super.* at 178, 538 A.2d 414. As a result, plaintiff presumably knew who the insurance carrier was and what the policy required. Plaintiff in this case is neither the owner or driver of the vehicle. Rather, she is an unrelated passenger, and MTF claims that no policy has been issued for the vehicle in question.

Only one case has addressed the issue of whether the *Longworth* procedures are required of an injured passenger.[3] In *Prudential Property & Casualty Co. v. Keystone Ins. Co.*, 286 *N.J.Super.* 73, 668 *A.2d* 92 (Law Div.1995), a passenger was injured in a car accident. All three parties, the passenger, the driver, and the tortfeasor, were insured. *Id.* at 76, 668 *A.2d* 92. There, the court, regarding the assertion that the passenger was required to also notify the insurance carrier covering the vehicle in which she was traveling, noted:

> But shall accident victims now also be charged with knowledge, not only of the content of their own policies, but also of the policies of others involved in the accident, as well as the judgment to discern which policy is primary for UIM coverage and which is excess? ... Is it not placing too much responsibility and risk on the shoulders of injured claimants for them to give notice to a putative "primary" carrier other than their own?
>
> [*Id.* at 79, 668 *A.2d* 92.]

We need not decide at this time the issue of whether *Longworth* notice is required of a passenger who is unrelated to the insured. Neither do we consider plaintiff's argument that prior to her acceptance of the settlement MTF should be deemed to have received the *Longworth* notice through its agent, Charlotte's Insurance Agency.

We are convinced for other reasons that MTF is not entitled to a *Longworth* defense. First, MTF by its own admission has not demonstrated that a policy was issued containing the appropriate conditions that would trigger the requirement of a *Longworth* notice. *See Rutgers Cas. Ins. Co. v. Vassas, supra,* 139 *N.J.* at 171–72, 652 *A.2d* 162 (noting that an insured cannot execute a general release without violating the *contractual* subrogation rights of the UIM carrier). Second, MTF cannot demonstrate it suffered prejudice by failing to receive a *Longworth*

---

[3] Plaintiff cites *Walsh v. State Farm Ins. Co.*, 301 *N.J.Super.* 619, 694 *A.2d* 324 (Law Div.1997), which involved an injured passenger. However, *Walsh* presents a unique factual scenario where one insurance company was both the liability and UIM carrier and, therefore, it provides little insight into the present issues. *Id.* at 621, 694 *A.2d* 324.

notice. *See Cooper v. Government Employees Ins. Co.*, 51 *N.J.* 86, 94, 237 *A.*2d 870 (1968) (noting that where a policy requires written notice, the lack of such notice will not be a basis for disclaimer of coverage absent a showing of prejudice); *see also Walsh v. State Farm Ins. Co.*, *supra*, 301 *N.J.Super.* at 625, 694 *A.*2d 324.

■ We hold that the intent of the Legislature would be defeated if the MTF is allowed to take the inconsistent positions that it provides no coverage and that there is no policy in existence, and at the same time that plaintiff should be precluded from recovery for failure to comply with the allegedly non-existent contract. We have determined the intent of the legislative enactment pertaining to UIM coverage to be that an injured party confronted with an underinsured tortfeasor be afforded "maximum and expeditious protection" through UIM coverage. *Longworth*, *supra*, 223 *N.J.Super.* at 184, 538 *A.*2d 414.

Even assuming the requirement of a *Longworth* notice is such a common procedure that a plaintiff ought not give a general release in circumstances which would compromise the subrogation rights of an insurance company potentially providing UIM coverage, MTF's defense must nonetheless fail. To this day, MTF by its own admission has not wavered from its position that it does not cover the vehicle in question. There is no assertion that the owner of the vehicle did not give notice of the accident, yet all interested parties, including this court, have continually been met with the response from MTF that there is no coverage because it was terminated for non-payment of premiums. However, it appears that payment of all required premiums was made to the insurance agency.

Further, counsel for MTF concedes that there was reinstatement of coverage on Felsher's vehicle, but that it was only prospectively granted by the MTF beginning on a date after this accident. MTF's position continues to be that there was no coverage for the date of the accident. Therefore, there is no reasonable prospect that it would have promptly caused itself to be placed in the position of the tortfeasor and have settled with

the plaintiff, thereby reserving its right to recover any sums it paid under MTF's UIM coverage. *Longworth, supra,* 223 *N.J.Super.* at 193–94, 538 *A.*2d 414.

■ If either a disclaimer or, as here, according to defendant's memorandum, no response was received to a *Longworth* notice, plaintiff could settle and the insurer would be required to pay UIM benefits notwithstanding its loss of subrogation rights, if coverage was ultimately found to exist. Thus, our decision does not place the disclaiming carrier in an exceptional position.

We, therefore, reverse and remand to the Law Division for a determination of whether MTF was required to provide coverage for the vehicle in question at the time of the accident by reason of the payment of premiums to Charlotte's Insurance Agency as producer of the MTF policy.

Reversed and remanded.